IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

DEMORNAI T. BESS-BEASLEY, )
 )
       Plaintiff, )
 )
v. ) Case No. CIV-17-358-KEW
 )
COMMISSIONER OF THE SOCIAL )
SECURITY ADMINISTRATION, )
 )
       Defendant. )

**OPINION AND ORDER**

Plaintiff Demornai T. Bess-Beasley (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was 21 years old at the time of the ALJ's decision. Claimant completed her education through the ninth or tenth grade but dropped out after she encountered legal problems. She subsequently took GED classes. Claimant has worked in the past as a fast food employee, cook, ice cream maker, sandwich maker, and food bagger. Claimant alleges an inability to work beginning May 1, 2014 due to limitations resulting from bipolar disorder, ADHD, depression, and mood swings.

**Procedural History**

On July 14, 2014, Claimant filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act.  Claimant's application was denied initially and upon reconsideration.  On September 12, 2016, Administrative Law Judge ("ALJ") David Engel conducted an administrative hearing by video with Claimant appearing in Muskogee, Oklahoma and the ALJ presiding from Tulsa, Oklahoma.  On October 13, 2016, the ALJ entered an unfavorable decision.  The Appeals Council denied review on August 7, 2017.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation.  He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of medium work with limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to find Claimant's conditions meet a listing; (2) finding Claimant could perform work at step five which requires a reasoning level of two;

and (3) finding jobs exist in significant numbers in the national economy which Claimant could perform.

## Consideration of a Listing

In his decision, the ALJ found Claimant suffered from the severe impairments of affective mood disorder, oppositional defiant disorder, attention deficit/hyperactivity disorder, organic mental disorder, and borderline intellectual functioning. (Tr. 21). The ALJ determined Claimant could perform a full range of medium, light, and sedentary work. He found Claimant could not climb ropes, ladders, and scaffolds and was unable to work in environments where she would be exposed to unprotected heights and dangerous moving machinery parts. She was able to understand, remember, and carry out simple instructions in a work-related setting, and was able to interact with co-workers and supervisors under routine supervision but was unable to interact with the general public more than occasionally (regardless of whether that interaction was in person or over the telephone). (Tr. 24).

After consultation with a vocational expert, the ALJ determined Claimant retained the RFC to perform the representative jobs of hand packer, conveyor line-bakery, small product assembler, and addresser, all of which were found by the ALJ to exist in sufficient numbers in both the regional and national economies. (Tr. 36-37).

5

As a result, the ALJ concluded that Claimant was not under a disability since May 19, 2014, the date the application was filed. (Tr. 37).

Claimant contends the ALJ should have determined that her impairment met or equaled a listing. Specifically, Claimant asserts that her mental impairments met Listing 12.05C. The ALJ is required to follow the procedure for determining mental impairments provided by regulation. 20 C.F.R. §§ 404.1520a, 416.920a; *See*, Listing of Impairments. The procedure must be followed for the evaluation to be considered valid. Andrade v. Sec. of Health & Human Services, 985 F.2d 1045, 1048 (10th Cir. 1993). The ALJ must first determine whether there are medical findings of mental impairment especially relevant to the ability to work found in Part A of the Listing of Impairments. 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). Additionally, Claimant must show he satisfies two of the following required restrictions: (1) marked restriction in activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00C, 12.04. The ALJ must then either evaluate the degree of functional loss resulting from the

6

impairment, using the Part B criteria, or examine the special criteria set forth in the listings for evaluating the severity of particular impairments. In asserting a condition meets a listing, a claimant bears the burden of demonstrating that his impairment "meet[s] all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severe, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

To meet or equal Listing § 12.05C, a claimant must demonstrate the following:

> 12.05 Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> \* \* \*
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.
>
> \* \* \*

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05C.

Claimant must satisfy all of these required elements for a Listing to be met. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). The Social Security Administration's Program Operations Manual System ("POMS") No. DI 24515.056(D)(1)(c) provides the following

7

instructions under Listing 12.05C:

> Slightly higher IQ's (e.g., 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitations of function may support an equivalence determination. It should be noted that generally higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found.
>
> POMS DI 24515.056(D)(1)(c).

"This evaluation tool, however, is used only when 'the capsule definition'" — i.e., the introductory paragraph of Listing 12.05 is satisfied. Crane v. Astrue, 369 F. Appx. 915, 921 (10th Cir. 2010) (quoting POMS DI 24515.056(B)(1)). The introductory paragraph or "capsule definition" of Listing 12.05 requires a claimant to satisfy three criteria: (1) "significantly subaverage general intellectual functioning;" (2) "deficits in adaptive behavior;" and (3) "manifested deficits in adaptive behavior before age 22." Wall v. Astrue, 561 F.3d 1048, 1062 (10th Cir. 2009); Randall v. Astrue, 570 F.3d 651, 661 (5th Cir. 2009).

The ALJ stated in his decision that he evaluated Claimant's mental impairments and determined that they did not meet or equal the criteria for Listing and 12.05. He stated that he evaluated the paragraph A criteria and found Claimant was "able to care for her own personal needs, including dressing, bathing, toileting, and the record has indicated she can follow directions, as she has been employed." (Tr. 23). He stated that he evaluated the paragraph B criteria and found Claimant did not have a valid verbal,

8

performance, or full scale IQ of 59 or less.  Id.  He discussed the findings of Dr. B. Todd Graybill who evaluated Claimant on April 1, 2015.  As a result of Dr. Graybill administering the WAIS-III test, Claimant obtained a Verbal IQ of 81, Performance IQ of 72, and a Full Scale IQ of 75, placing her in the borderline range of intellectual functioning.  (Tr. 389).

The ALJ also discussed the paragraph C criteria of Listing 12.05 and concluded Claimant did not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.  (Tr. 23).

Claimant urges that an IQ score of 72 is sufficiently close to the required score of no more than 70 to equal the listing.  As stated, this is only true if "in the presence of other physical or mental disorders that impose additional and significant work-related limitations of function may support an equivalence determination."  Under the capsule definition, Claimant would have to exhibit "deficits in adaptive functioning."  Deficits in adaptive functioning under the DSM-IV encompasses "how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, in the areas of communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health

9

and safety." DSM-IV at 42, 49. Claimant has failed to indicate in the record the existence of deficits in adaptive functioning. The ALJ specifically found that the paragraph A criteria was not met for an equivalence finding. Claimant has not sufficiently challenged this finding with evidence. Claimant's mental impairments do not meet or equal the criteria of Listing 12.05C.

**Step Five Evaluation**

Claimant next asserts that the ALJ erred in finding Claimant could perform that the representative jobs identified by the vocational expert because they all required a reasoning level of 2. Claimant contends her RFC precludes her from performing at that reasoning level. In the RFC, the ALJ found Claimant could "understand, remember, and carry out simple instructions in a work-related setting." (Tr. 24). This level of limitation has been found to be compatible with jobs with a reasoning level of 2. <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1176 (10th Cir. 2005). Claimant's assertion that it is suggestive of a reasoning level of 1 is without foundation. The Hand Packer job (DOT #920.587-018), Product Assembler job (DOT #706.684-022), and Addresser job (DOT #209.587-010) all have a reasoning level of 2 according to the *Dictionary of Occupational Titles*. The Bakery Worker job (DOT #524.687-022) has a reasoning level of 1. Even under Claimant's argument, one of the jobs identified meets her functional ability.

Claimant then argues that the Bakery Worker job does not exist

is sufficient numbers in the national economy. The vocational expert testified that there were 150 such jobs in Oklahoma and 25,000 nationally. (Tr. 36). "[T]he number of jobs that contributes to the 'significant number of jobs' standard looks to the national economy—not just a local area." Raymond v. Astrue, 621 F.3d 1269, 1274 (10th Cir. 2009)(citation omitted). The Tenth Circuit in Trimiar established that "[t]his Circuit has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number' and rejects the opportunity to do so here." Trimiar at 1330. Rather, an ALJ must explicitly set forth a discussion of the factors identified above in determining that the number of jobs a claimant can do exist in significant numbers and an ALJ's finding is sufficient if the record supports a conclusion that the ALJ used a common sense approach in "weighing the statutory language as applied to a particular claimant's factual situation." Johnson v. Colvin, 2014 WL 4215557, 3 (W.D. Okla.). Given the imprecise nature of this analysis, this Court is unwilling to find that 25,000 represents an insignificant number of jobs. *See*, Rogers v. Astrue, 2009 WL 368386, 4 (10th Cir.)(testimony by vocational expert of 11,000 hand packager jobs in the national economy could be relied upon by the ALJ as substantial evidence to support a finding of non-disability). Since at least one job exists in sufficient numbers which is not in conflict with the DOT, the ALJ had substantial evidence to support

11

his step five determination.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 19th day of March, 2019.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE